# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| George von Brugger, individually and on behalf of other similarly situated individuals, | ) ) ) ) | Civil No. 0:13-cv-00005-JNE-FLN |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **Defendants' Memorandum Of Law In Support Of Their Motion To Transfer Venue** |
| Jani King of Minnesota, Inc., Jani-King Inc., and Jani-King International, Inc., | ) ) ) ) | |
| Defendants. | ) | |

## INTRODUCTION

This case is a nation-wide putative collective action asserting overtime claims under the Fair Labor Standards Act on behalf of approximately 133 current and former employees employed by various related companies across the country.  Of the 21 corporate entities at issue, only *one* does business in Minnesota.  Of the 133 employees at issue, only *five* worked in Minnesota.  Indeed, over ninety-six percent of the putative class members live in states that are more than a thousand miles from Minnesota.  They do not train or work in Minnesota, are subject to no oversight or policies that come from Minnesota, and do not even work for Minnesota companies.  In fact, they work for different Texas-based corporations that are subsidiaries of Defendants Jani-King, Inc. and Jani-King International, Inc. ("Jani-King International").  Those corporations will need to be named as defendants to litigate the Complaint's nation-wide claims.  Like the people

they employ, however, none of these companies has any connection to Minnesota, and none is subject to personal jurisdiction here.

This case's principal connection to Minnesota is that named Plaintiff George von Brugger ("von Brugger")—and a handful of putative class members—worked here.  And von Brugger's employer, Defendant Jani-King of Minnesota, Inc. ("Jani-King of Minnesota"), a Texas corporation, does business in Minnesota.  But these limited connections do not justify maintaining this case in Minnesota.  The Court's lack of subject matter jurisdiction over the companies that employ over 96 percent of the putative class members requires that the Court transfer this case to the Northern District of Texas, which has jurisdiction over all of the necessary parties.  Such a transfer is also appropriate because Texas is a more convenient forum.  Texas has a higher concentration of witnesses than Minnesota, including the only persons who can testify about how, if at all, evidence applies across the affiliate corporations.   Documents that will play central roles in the litigation of the Complaint's claims—such as payroll records—are maintained in Texas.  And over five times as many putative class members reside in Texas or a state neighboring Texas than reside in Minnesota.

Texas is, in short, this case's gravitational center, and the only forum with a connection to and jurisdiction over all of indispensible parties to this case.   For these reasons, and all of the reasons set forth below, the Court should transfer this case from Minnesota to the Northern District of Texas.

# FACTS

## A.      The Complaint And Its Nation-wide Claims

The Complaint alleges that Defendants improperly classified von Brugger and others as exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Compl. ¶¶ 1-4.) It seeks to establish a nationwide collective action on behalf of all current and former "Operations Managers" and "Assistant Operations Managers" who worked in what von Brugger describes as any Jani-King affiliated regional "office" from January 2, 2010 to the present and were classified as exempt under the FLSA. (*Id.* ¶¶ 3, 9, 22.)[1]

Approximately 133 current and former employees worked as salaried Operations Managers or Assistant Operations Managers nation-wide during the period alleged in the Complaint and are therefore potential class members. (**Burleson** Dec'l ¶ 9.) Of those, only five, including von Brugger, worked for Defendant Jani-King of Minnesota in Minnesota. (*Id.* ¶ 14.) As set forth more fully below, the remaining 128 putative class members worked for different Jani-King affiliate companies in different regions of the country. (*Id.* ¶ 15.)

---

[1] Shortly after von Brugger filed his complaint, Defendants' counsel contacted von Brugger's attorney regarding whether von Brugger would limit his collective claims to Minnesota-based employees. (Knapp Dec'l ¶ 2.) von Brugger's counsel declined, indicating that he intended to pursue nation-wide claims. (*Id.* ¶ 3.)

## B.     The Putative Class Members Worked For Separate Affiliate Corporations Located Across The United States

As the franchisor of commercial cleaning franchisees, the corporate structure of Jani-King is organized as a three-tiered system.  (Burleson Dec'l ¶ 3.)  The first tier consists of Jani-King International, which is a Texas corporation headquartered in Addison, Texas.  (*Id.* ¶ 4.)  Its principal business is to develop and maintain intellectual property and proprietary methods that are licensed to franchise owners who wish to run their own commercial cleaning businesses.  (*Id.*)  Jani-King, Inc, which is a wholly owned subsidiary of Jani-King International and is also a Texas corporation headquartered in Addison, comprises the second tier.  (*Id.* ¶ 5.)  It operates as a holding company.  (*Id.*)  The third tier is composed of 19 domestic affiliate corporations, which are wholly owned subsidiaries of Jani-King, Inc., that implement the Jani-King system at a regional level.  (*Id.* ¶ 6.)  The regional offices are responsible for, among other things, selling and supporting franchises within their territory.  (*Id.*)

Each of the 19 affiliate corporations is incorporated and headquartered in Texas, but does business exclusively within a particular geographic region of the United States. (*Id.* ¶ 7.)  For example, Jani-King of Oklahoma, Inc. conducts business in Oklahoma City and surrounding areas.  (*Id.*)  Conversely, Defendant Jani-King of Minnesota focuses its operations principally in the greater Twin Cities area.  (*Id.*)  This map reflects the locations in which the Jani-King affiliates do business, along with the percentage of putative class members in each region of the country and the number of putative class members who worked at each regional office:



Notably, all of the officers of the affiliate corporations, including Jani-King of Minnesota, reside in Texas or neighboring Louisiana.  (*Id.* ¶ 23.)

While the day-to-day operations of the regional affiliates are the responsibility of a Regional Manager, who is an employee of the affiliate corporation, the affiliate corporations receive certain Texas-based administrative support from Jani-King International.  In particular, the payroll functions for each regional affiliate are performed at the central Texas headquarters.  (**Burleson** Dec'l ¶ 26.)  Thus, all of the payroll and other compensation records for von Brugger and the potential class members at the 19

regional corporations are generated and stored in Texas.  (*Id.*)  Jani-King International

also maintains other records, such as corporate personnel files, in Texas.  (*Id.*)

Further, Jani-King International develops guidelines that are distributed to all of

the regional affiliate corporations to ensure uniformity in operating as a franchisor.  For

example, Jani-King International developed a Jani-King Operations Manger Guide that

serves as a reference point for Operations Managers as they perform their substantive

work duties.  (*Id.*)  That document was also developed in Texas, as were training

materials used by Operations Managers and Assistant Operations Managers.  (*Id.*)

### D.      The Affiliate Corporations Have Little Or No Contacts With Minnesota

As the foregoing reflects, the putative class members and the regional affiliate

corporations that directly employ them have no connection to Minnesota.  Indeed, with

the exception of Defendant Jani-King of Minnesota, the regional affiliate corporations

have no regular contacts with the State of Minnesota.  None has any physical presence or

employees in Minnesota.  (Burleson Dec'l ¶¶ 15–17.)  None is authorized to do business

in Minnesota.  (*Id.*  ¶ 16.)  None solicits business from Minnesota.  (*Id.*) And none

receives any revenue from Minnesota.  (*Id.*)

Nor is there any broader connection to Minnesota.  The potential class members

who do not work in Minnesota are not otherwise subject to any Minnesota-based

supervision or Minnesota-generated guidelines.  (Burleson Dec'l ¶ 21.)  While Texas-

based personnel provide support to all of the affiliate corporations, the affiliate

corporations do not share employees amongst themselves or otherwise coordinate with

one another regarding human resources issues.  (*Id.* ¶ 19.)  Jani-King of Minnesota does

not maintain any employment records concerning the other affiliates' employees in

Minnesota or elsewhere.  (*Id.* ¶. 18.)  And although they do travel to Texas for training

and meetings, none of the other affiliates' employees engage in any regular business

travel to Minnesota.  (*Id.* ¶ 22.)

## ARGUMENT

### A.    Applicable Standard

Section 1404(a) provides that, "for the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or

division where it may have been brought."  28 U.S.C. § 1404(a).  Courts may therefore

consider three factors in evaluating a motion to transfer: "(1) the interest of justice, (2)

the convenience of the witnesses, and (3) the convenience of the parties."  *Prod.*

*Fabricators, Inc. v. CIT Commc'ns Fin. Corp.*, No. CIV 06-537 RHK/RLE, 2006 WL

2085413, at *2 (D. Minn. July 25, 2006).  But these are not the only (or necessarily the

most important) considerations relevant to the § 1404(a) analysis.  Rather, transfer

motions "require a case-by-case evaluation of the particular circumstances at hand and a

consideration of all relevant factors" *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688,

691 (8th Cir.1997); *see also Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)

(noting that district courts must "weigh in the balance a number of case-specific factors").

And while the decision to transfer a case is largely within the district court's discretion,

that discretion should be exercised with reference to the court's "independent obligation

to ensure that cases are litigated efficiently and thus to preserve scarce judicial

resources." *Winmark Corp. v. Hill*, No. 08-6192(PJS/AJB), 2009 WL 961370, at *5 (D.

Minn. Apr. 7, 2009).

> **B.     This Putative Collective Action "Might Have Been Brought" In The Northern District Of Texas**

This case satisfies the threshold criterion of § 1404(a) because it "might have been

brought" in the Northern District of Texas. *Groesbeck v. Sgarlato Med, LLC*, No. CIV.

10-3782 ADM/JJK, 2011 WL 383701, at *2 (D. Minn. Feb. 3, 2011) (describing

satisfaction of § 1404(a)'s "might have been brought" standard as the "threshold"

determination when deciding to transfer venue).  The Texas court would have had (and

has) subject matter jurisdiction over von Brugger's FLSA claims because those claims

"aris[e]" under the laws of the United States.  28 U.S.C. §1331; *see also* 29 U.S.C. §

216(b) ("An action to recover the liability prescribed . . . may be maintained against any

employer . . . in any Federal or State court of competent jurisdiction[.]").  And all three

named Defendants in this case are Texas corporations headquartered in the Dallas area,

so each "resides" in the Northern District of Texas for purposes of personal jurisdiction

and venue.  *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen

of any State by which it has been incorporated and of the State where it has its principal

place of business."); 28 U.S.C. § 1391(c) (for venue purposes, "a corporation shall be

deemed to reside in any judicial district in which it is subject to personal jurisdiction at

the time the action is commenced").[2] Consequently, jurisdiction and venue in a Texas-

filed action would have been proper.

### C.     The Interest Of Justice Supports This Case's Transfer To The Northern District of Texas

Courts "weigh[]" the interest of justice factor "heavily" when deciding § 1404(a)

motions.  *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 794 (D. Minn. 2010).

In fact, it "may be determinative in a particular case, even if the convenience of the

parties and witnesses might call for a different result."  *Prod. Fabricators, Inc.*, 2006 WL

2085413 at *2 (*quoting Coffey v. Van Dorn Iron Works*, 795 F.2d 217, 220–21 (7th Cir.

1986)) (internal quotation marks omitted).  This District has repeatedly found that the

interest of justice factor favors transfer when there are questions about whether the court

has personal jurisdiction over all of the defendants.  *See, e.g.*, *Cosmetic Warriors Ltd. v.*

*Abrahamson*, 723 F. Supp. 2d 1102, 1109 (D. Minn. 2010) (citing doubts over the

Court's subject matter jurisdiction when transferring case under § 1404(a)).  Courts also

---

[2] Whether the Texas court has personal jurisdiction over von Brugger is not germane to this analysis.  As one court has noted, "personal jurisdiction over a plaintiff in the transferee forum is irrelevant on a motion to transfer venue under § 1404(a) because the consideration is whether the plaintiff could have brought suit in the transferee court, and a plaintiff, by bringing a suit consents to the jurisdiction of the Court."  *Rogan v. United States*, 2:07-CV-403-JVB, 2008 WL 282351, at *7 n.5 (N.D. Ind. Jan. 31, 2008); *see also In re Genentech, Inc.,* 566 F.3d 1338, 1346 (Fed.Cir.2009) ("There is no requirement under §1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint."); *F.T.C. v. Watson Pharm., Inc.,* 611 F.Supp.2d 1081, 1090 (C.D. Cal. 2009) ("[T]he inquiry into due process asks if the transferee court has jurisdiction over the defendants, not the plaintiffs.") (citing 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure,* § 3845 (3d ed. 2007)).

consider "judicial economy" and "each party's ability to enforce a judgment," among other things, when evaluating the interest of justice factor. *Prod. Fabricators, Inc.*, 2006 WL 2085413 at *2. These considerations strongly support transfer of this case to the Northern District of Texas.

i.    <u>Only The Northern District of Texas Has Personal Jurisdiction Over All Of The Likely Defendants</u>

The Northern District of Texas is the only district court in the country that indisputably has personal jurisdiction over each of the 19 affiliate corporations that directly employ the putative class members. von Brugger's counsel has affirmatively stated his intent to pursue nation-wide claims. (Knapp Dec'l ¶ 3.) But von Brugger cannot proceed with his nation-wide claims unless he identifies class members from outside of Minnesota—none of whom work for any of the named Defendants—who wish to join the lawsuit. *See generally Powell v. Carey Int'l, Inc.*, 05-21395-CIV-SEITZ, 2006 WL 4562105, at *4 (S.D. Fla. Mar. 27, 2006) (denying certification of nationwide claims because only one employee from outside the named plaintiff's region opted into the lawsuit, and plaintiff failed to show that there were other employees nation-wide who "desire[d]" to opt-in).[3] Because the nation-wide claims pled in the Complaint will require class members from outside of Minnesota to join this lawsuit either as a named plaintiff or as an opt-in party, they likewise demonstrate that the affiliate corporations that employ potential class members from outside of Minnesota will need to become

---

[3] *See also Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164-65 (D. Minn. 2007) ("[B]efore a conditional-certification motion may be granted, a named plaintiff (or plaintiffs) must proffer some evidence that other similarly situated individuals desire to opt in to the litigation.").

defendants. That is how these cases proceed. *See, e.g.*, *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462, 464 (3d Cir. 2012) (naming parent corporation and 38 subsidiaries that directly employed putative class members as defendants in FLSA overtime collective action); *Prince v. MND Hospitality, Inc. et al.*, No. H-08-2617, 2009 WL 2170042, at *1 (S.D. Tex. July 20, 2000) (naming parent and subsidiary corporation); *see also Brennan v. Qwest Commc'ns Int'l, Inc. et al.*, 727 F. Supp. 2d 751, 753 (D. Minn. 2010) (plaintiff named multiple affiliated corporations as defendants in FLSA collective action).

As explained above, however, Jani-King of Minnesota is the only one of the 19 affiliate corporations that has a presence and conducts business in Minnesota, and it employed just von Brugger and four other putative class members. (Burleson Dec'l ¶¶ 14; 16.) The remaining 96 percent of putative class members are employed by different affiliate corporations that, while incorporated and headquartered in Texas, do business in other regions throughout the United States. (*Id.* ¶ 15.) These affiliate companies are not authorized to do business in Minnesota, do not solicit any business from Minnesota, and do not keep records of any kind in Minnesota. (*Id.* ¶¶ 16–18.) They have no Minnesota employees, receive no revenue from Minnesota sources, and are not subject to any sort of oversight from any employee or officer located in Minnesota. (*Id.* ¶¶ 16–22.) They do not, in short, have sufficient minimum contacts with Minnesota to render them subject to personal jurisdiction here. *See generally Quality Improvement Consultants, Inc. v. Williams*, No. Civ. 02-3994(JEL/JGL), 2003 WL 543393, at *3 (D. Minn. Feb. 24, 2003) (noting that minimum contacts exist when "'the defendant's conduct and connection with

the forum State are such that he should reasonably anticipate being haled into court there'") (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *Cosmetic Warriors Ltd.*, 723 F. Supp. 2d at 1109 (noting "the well-settled rule that '[e]ach defendant's contacts with the forum state must be assessed individually'") (citation omitted).[4]

This Court's lack of personal jurisdiction over the companies that employ the vast majority of putative class members and will no doubt be added as parties to this lawsuit during the litigation of the nation-wide claims alone warrants this case's transfer to Texas.  *See, e.g.*, *Cosmetic Warriors Ltd.*, 723 F. Supp. 2d at 1109 (transferring case to Texas for the "important reason[]" that the Court harbored "serious doubts whether" a defendant was subject to personal jurisdiction in Minnesota); *Winmark Corp.*, 2009 WL 961370 at *4-5 (citing fact that the Court would have to dismiss a defendant for lack of personal jurisdiction if it retained the case in ordering a case transferred to Florida); *Superior Edge, Inc. v. Maricopa County Comm. College Dist.*, 509 F. Supp. 2d 786, 795 (D. Minn. 2007) (transferring case to the District of Arizona in the "interest of justice" because the court "lack[ed] personal jurisdiction over the defendant"); *Quality Improvement Consultants*, 2003 WL 543393 at *10 (holding that court's lack of personal jurisdiction over defendant favored transfer in the interest of justice).

---

[4] The fact that Jani-King of Minnesota, Jani-King, Inc., and Jani-King International may be subject to personal jurisdiction in Minnesota does not establish personal jurisdiction over the other affiliated companies.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984) ("[J]urisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary. Each defendant's contacts with the forum State must be assessed individually.").

It does not matter that the Court has not certified the national collective action claims involving the affiliate corporations' employees.   Rather, the fact that "the *possibility* exists that the matter could be . . . certified as a FLSA collective action" may support transfer to another district.  *Andrews v. A.C. Roman & Assocs., Inc.*, 5:12-CV-551, 2012 WL 6649149, at *6 (N.D.N.Y. Dec. 20, 2012) (emphasis added). Analogously, in *Winmark Corp.* the Court recognized that it was possible that the plaintiff would decide "not to proceed against" a defendant over whom the Court lacked subject matter jurisdiction, but it nonetheless found that its "independent obligation to ensure that cases are litigated efficiently" warranted transferring the case to a forum with personal jurisdiction over all of the defendants.  2009 WL 961370 at *4-5.

It would serve no interest to litigate this case in a forum that lacks personal jurisdiction over the entities that are necessary parties to the nation-wide claims that are pled in the Complaint.  The cost of litigating the question of personal jurisdiction itself justifies transfer to a forum where those costs would not be incurred.  *See Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 WL 840514, at *5 (W.D. Wis. Mar. 16, 2007) (holding that transfer was in the interest of justice in case in which defendant challenged personal jurisdiction because it was "probable that asserting personal jurisdiction would result in significant legal and judicial costs on appeal and the risk of reversal which could negate and waste the resources expended for the entire matter").

The actual cost of litigating jurisdiction aside, starting nationwide discovery from Minnesota only to have the case subsequently transferred to another forum after certification would almost certainly delay the case's resolution and create inefficiencies

13

for the parties and the courts.  *See generally Van Dusen v. Barrack*, 376 U.S. 612, 616

(1964) (noting that § 1404(a)'s purpose is to "prevent the waste of time, energy and

money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense." (citations, quotations, omitted)).  The Court's lack of

jurisdiction over all of the defendants necessary to the nation-wide FLSA claims supports

transfer of this case to the Northern District of Texas.

ii.    Regardless Of Personal Jurisdiction, The Interest Of Justice Still
       Favors Transfer Of This Case To Texas

Transferring venue to the Northern District of Texas is also appropriate because of

the broader inefficiencies of litigating a case with minimal connections to Minnesota in

the District of Minnesota.  As a matter of law, the only way for this nation-wide

collective action involving employees working at different affiliate corporations, in

different geographic regions, and for different Regional Managers to succeed is for von

Brugger and the putative class members to show that they were all subject to a policy or

plan that violated the FLSA.  *See generally Ray v. Motel 6 Operating, Ltd. P'Ship*, No. 3-

95-828, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996) (denying certification of FLSA

collective overtime action in case in which plaintiffs worked in different regions

throughout the country and could point to no centralized, uniform policies or controls).

And as a matter of fact, the only place from which any policy or practice could emanate

with regard to the nation-wide putative class members is Texas.  (Burleson Dec'l ¶ 20.)

Thus, this litigation must necessarily focus on Texas-based activities, which

further undermines Minnesota's connection to the case and any assertion that it could be

litigated more efficiently here.  *See generally Earley v. BJ's Wholesale Club, Inc.*, No. 06 CIV. 3529 (WHP), 2007 WL 1624757 (S.D.N.Y. June 4, 2007) (finding transfer of case to Massachusetts was proper "because Plaintiff's claims focus[ed] on the nature and implementation of Defendant's company-wide overtime policies and not those of the Pennsylvania store in particular, [making] it . . .likely that most discovery [would] take place at BJ's headquarters in Massachusetts"); *Butcher v. Gerber Prods. Co.*, No. 98 CIV. 1819 (RWS), 1998 WL 437150, at *8 (S.D.N.Y. Aug. 3, 1998) (transferring collective action to district where defendant had its headquarters because the policy decisions giving rise to plaintiffs' claims occurred there).

Further, the joint employment allegations that von Brugger has already asserted (*see* Compl. ¶ 13), ensure that the claims' connection to Minnesota will be slight.  Courts apply an "economic reality" test to determine whether a plaintiff can overcome the "strong presumption" that "a parent company is not the employer of its subsidiary's employees."  *Brown v. Fred's, Inc.*, 494 F.3d 736, 739 (8th Cir. 2007) (*citing Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993)); *Dybevik v. Quality Pork Processors, Inc.*, No. CIV.00-1611 (ADM/SRN), 2001 WL 811124, at *1 (D. Minn. July 10, 2001) (discussing "economic reality" standard).  And while courts have articulated that test differently, the inquiry consistently looks at the integration of operations and the alleged joint employer's authority and exercise of control over the direct employer's employees. *See, e.g.*, *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012) (adopting a four factor analysis).

But whether Jani-King, Inc. or Jani-King International exercises sufficient control over the affiliate corporations to, for example, render it a joint employer of a New York or California affiliate has *nothing* to do with anything (or anyone) in Minnesota.  Indeed, von Brugger's allegations make clear that analysis will focus on individuals and evidence in Texas even for Jani-King of Minnesota.  (*See* Comp. ¶32 (alleging that the Texas-based entities "directed the operations of Defendant Jani-King of Minnesota" and that von Brugger's work was "monitored out of Texas").)[5]

These considerations demonstrate the veracity of one court's observation that the "logical epicenter of the material events" is the defendant's offices.  *Dortch v. Fin. Alternatives*, No. 01 C 7416, 2002 WL 598518, at *4 (N.D. Ill. 2002).  It would further neither the efficient litigation of this case nor broader concepts of judicial economy[6] to

---

[5] Defendants dispute this allegation and dispute that the evidence will demonstrate that Jani-King, Inc. and Jani-King International, Inc. are joint employers of von Brugger or the putative class members.  Indeed, numerous courts have held that the mere fact that a parent corporation promulgates policies or provides payroll or other administrative assistance to a subsidiary does not make the parent a joint employer of the subsidiary's employees.  *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 343 (W.D. Pa. 2010) *aff'd*, 683 F.3d 462 (3d Cir. 2012) ("A parent corporation may provide administrative services to subsidiaries without exercising control that rises to the degree to deem it a joint employer with the subsidiaries."); *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 942 (7th Cir. 1999) (noting that "[f]irms too tiny to achieve the realizable economies of scale or scope in their industry will go under unless they can integrate some of their operations with those of other companies, whether by contract or by ownership").  But whether evidence demonstrates that a parent corporation is a joint employer is a question distinct from where the evidence relevant to that determination is located, which in this case is in Texas.

[6] In considering the interest of justice factor, courts may also weigh the relative caseloads of the transferor and transferee courts.  *Groesbeck*, 2011 WL 383701 at *3 (noting that, as of early 2011, the District of Minnesota had "the third-highest weighted caseload in the country").  Statistics for the year 2011 show that the Northern District of Texas had, despite having five more district judges in active service than the District of Minnesota,

16

litigate this case in Minnesota when its "logical epicenter" is in Texas.  And for that

reason too, the interest of justice supports transfer of this case to the Northern District of

Texas.

> **D.      The Northern District of Texas Is A More Convenient Forum For The Witnesses**

The convenience of the witnesses confirms the Northern District of Texas's place

as the gravitational center of this lawsuit.  *See generally Prod. Fabricators, Inc*, 2006 WL

2085413 at *5 (noting that in evaluating the convenience of the witnesses factor, courts

consider the number of essential non-party witnesses, their location, and the preference of

courts for live testimony as opposed to depositions).  As an initial matter, the only non-

party Minnesota witnesses are a small handful of Jani-King of Minnesota employees who

worked with von Brugger and the four other potential Minnesota class members.

(Burleson Dec'l ¶¶ 17; 25.)  Their presence in Minnesota should not weigh significantly

in the transfer analysis because their testimony is not likely to be meaningful to the

nation-wide claims.  *See Earley*, 2007 WL 1624757 at *3 (noting the fact that a few

stores were located in a particular state was of "limited importance [to the transfer

analysis] since Plaintiff asserts FLSA claims on behalf of a nationwide class").

As for the other regional witnesses, they are scattered across different states (with

the highest concentrations in the Northeast and South-central United States); given the

---

approximately 1500 fewer cases than the District of Minnesota.  Administrative Office of
the United States Courts, *2011 Annual Report of the Director: Judicial Business of the
United States Courts*, at Table C-5 (Washington, D.C. 2012), *available at*
http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011
/JudicialBusiness2011.pdf.

central geography of both Minneapolis and Dallas, they are not going to be inconvenienced further by the case's transfer to the Northern District of Texas. *See Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-720 (RHK/JJG), 2009 WL 1684428, at *5 (D. Minn. June 16, 2009) (noting, despite differences in geographic distance, that "[i]n this era of tight airport security, weather delays, scheduling problems, and the like, it is highly unlikely that travel from Texas to Colorado would be appreciably shorter than travel from Texas to Minnesota").

The principal witnesses that can provide evidence potentially relevant to the national putative class reside in Texas. In fact, even if this case never becomes a certified collective action, Texas-based witnesses will still supply much of the testimony relevant to the allegations in von Brugger's Complaint. For example, the corporate officers of the three Defendants—and of the other 19 affiliate corporations—who can testify as to general business operations and the relationship between the corporations all reside in Texas, with the exception of one officer who resides in Louisiana. (Burleson Dec'l ¶ 23 (setting forth the names and residencies of each officer).)

Beyond these individuals, Defendants may offer, in defense of this lawsuit's claims, deposition and/or trial testimony of Texas-based Directors of Corporate Development who work with the affiliate corporations' Regional Managers, as well as Texas-based human resources and payroll personnel. A Texas forum would be more convenient for these witnesses. *See, e.g.*, *Farrior v. George Weston Bakeries Distrib., Inc.*, No. 08-CV-2705 (JFB)(WDW)*, 2009 WL 1133774, at *4 (E.D.N.Y. Jan. 15, 2009) (holding that because most of the witnesses that could testify to defendants' formulation

of overtime compensation policies and practices worked at the defendants' corporate headquarters in Pennsylvania, the convenience of the witnesses factor "strongly" favored transfer to Pennsylvania); *Evancho v. Sanofi-Aventis U.S., Inc.*, No. C 07-0009 SI, 2007 WL 1302985, at *3 (N.D. Cal. May 3, 2007) (finding that convenience of witnesses favored transfer to the district of defendant's headquarters when "the key operational and administrative personnel who would testify as to payroll practices and company policies regarding the positions at issue" lived near defendants' headquarters).

Texas is also home to other evidence likely to be relied upon by both parties. von Brugger's and each potential opt-in plaintiff's personnel and payroll records are maintained at corporate headquarters in Texas. (Burleson Dec'l ¶ 26.) And although testimony from regional witnesses will be necessary to establish the extent to which it was followed within each region, the Jani-King Operations Manager Guide was also developed in Texas and the materials that support it are maintained there. (*Id.*) Moreover, because the putative class members worked at 19 different companies scattered throughout the United States, Texas is the *only* forum that could have documents and witnesses that apply across the putative class. *See generally Early v. BJ's Wholesale Club, Inc.*, No. 06 Civ. 3529(WHP), 2007 WL 162457, at *3 (transferring nationwide putative collective action from New York to Massachusetts in part because "the single most likely source of relevant documents is Defendant's headquarters in Massachusetts because that is where Defendant's corporate policies are determined").

Accordingly, the number of witnesses in Texas, the centrality of their testimony to the nation-wide claims, and the Texas location of evidence that is likely to inform much

of their testimony and the course of this litigation, favor transfer of this case to the

Northern District of Texas.  And for that reason too, the Court should grant Defendants'

motion. *See Cosmetic Warriors Ltd.*, 723 F. Supp. 2d at 1106-07 (considering both the

importance of witnesses' testimony and the number of Texas-based witnesses in

concluding that the convenience of the witnesses favored transfer of case from Minnesota

to Texas).

      **E.**      **The Northern District Of Texas Is A More Convenient Forum For The Parties**

Like the convenience of the witnesses, the convenience of the parties also favors

transfer of this case to the Northern District of Texas.  As this Court has observed, "'[t]he

logical starting point for analyzing the convenience of the parties is a consideration of

their residences in relation to the district chosen by the plaintiff and the proposed

transferee district.'" *Prod. Fabricators, Inc. v. CIT Communications Fin. Corp.*, CIV 06-

537 RHK/RLE, 2006 WL 2085413, at *5 (D. Minn. July 25, 2006) (quoting 17 *Moore's*

*Federal Prac.* § 11.13[1][e]).  In doing so, the court may examine "the residences of the

entire potential class of FLSA plaintiffs, not just the residences of those plaintiffs who

have opted-in at this point."  *Dacar v. Saybolt LP*, No. 7:10-cv-12-F, 2011 WL 223877,

at *5 (E.D.N.C. Jan. 24, 2011).

Here, only von Brugger and four other putative class members worked in

Minnesota.  (Burleson Dec'l ¶ 14.)  In contrast, 26 putative class members worked in

Texas or in a state that borders Texas, making Texas the more convenient forum for over

five times as many putative class members as Minnesota.  (*Id.*)  As for the remaining

putative class members, the majority are located in the Northeast and in California.  (*Id.* ¶ 15.)  And given the central geography of both Minneapolis and Dallas, the inconvenience of travelling for these putative class members will be similar regardless of whether the forum is in Minnesota or Texas.  (*See* discussion at Section D., *supra*.)

Even so, Texas is the more convenient forum for all of the current Defendants, as well as the affiliate corporations that employ the putative class members, because each is headquartered and maintains relevant documents there.  (Burleson Dec'l ¶¶ 7; 26.)  Indeed, even if the transferee forum is "marginally less convenient than litigating in Minnesota" for some of the putative class members, the convenience of the parties factor still weighs "heavily in favor of transfer" where, as here, the transferee forum would be "far more convenient for" for the defendants. *Quality Improvement Consultants, Inc.*, 2003 WL 543393 at *10.

With its higher concentration of putative class members than Minnesota, ease of travel for potential class members, and obvious convenience for Defendants and the entities that will become defendants if the nation-wide claims proceed, Texas is most convenient forum for the parties to this lawsuit.  This factor therefore supports transfer to Texas too.

### F.    Because He Has Brought A Putative Collective Action, von Brugger's Choice Of Forum Should Be Given Little Weight

von Brugger cannot overcome the multiple, independent reasons that support this case's transfer to Texas by pointing to the traditional rule that a plaintiff is presumptively entitled to chose his forum.  In representative actions, a plaintiff's choice of forum is

afforded little weight because "there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." *Eichenholtz v. Brennan*, 677 F. Supp. 198, 201 (S.D.N.Y. 1988).  For that reason, courts have refused to allow the preference of one to defeat the convenience of many.  *See, e.g.*, *Koster v. Lumbermen Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (noting that "where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened"); *Dacar v. Saybolt LP*, No. 7:1O-CV-12-F, 2011 WL 223877, at *4 (E.D.N.C. Jan. 24, 2011) (explaining that plaintiff's "decision to seek relief through a nationwide collective action under the FLSA militates against a more deferential view of his choice of forum"); *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 274 (D. Conn. 2006) (transferring case and holding that plaintiff's choice of forum was "entitled to less weight" because she brought a nation-wide class action).

This Court should similarly give little weight to von Brugger's choice of forum. von Brugger could have filed an individual action, but chose instead to file a collective action involving every Operations Manager and Assistant Operations Manager nation-wide.  And unlike von Brugger, these putative class members lack *any* connection to Minnesota.[7]  Having sued on their behalf, von Brugger should not be permitted to trump

---

[7] von Brugger did have an employment contract with Jani-King of Minnesota that had a choice of venue provision relating to claims arising out of the contract, but it should similarly receive no weight in the transfer analysis.  Substantial law holds that contractual forum selection clauses do not apply to FLSA claims.  *See, e.g.*, *Saunders v. Ace Mortg.*

the convenience of over 130 putative class members with his own preference for a

Minnesota forum.  His preference notwithstanding, § 1404(a) warrants transfer to Texas.

## CONCLUSION

Minnesota's minimal connections to this lawsuit and the inherent difficulties of

litigating it here stand in contrast to the efficiencies and closer connection to the

underlying facts, parties, and witnesses that a Texas forum would afford.  Only von

Brugger and four other possible class members worked in Minnesota, few significant

documents or witnesses are located here, and this Court lacks personal jurisdiction over

the Jani-King affiliate corporations that employed over 96 percent of the potential class

members.  Conversely, the Northern District of Texas:

- Has jurisdiction over *all* of the 19 affiliate corporations;

---

*Funding, Inc.*, No. 05-1437 (DWF/SRN), 2005 WL 3054594, at *3 (D. Minn. Nov. 14, 2005) (holding, in motion to transfer venue under § 1404, that "the forum-selection clause does not cover Plaintiffs' FLSA claims.  The Plaintiffs' FLSA claims do not depend on the existence of the employment contract, nor does the resolution of Plaintiffs' FLSA claims relate to the interpretation of the employment contract."); *see also Pacheco v. St. Luke's Emergency Assocs., P.C.*, 879 F. Supp. 2d 136, at*5 (D. Mass. 2012) ("[Plaintiff's] FLSA wage claim is not dependent on any provision of the Employment Agreement, and is not controlled by the forum selection clause."); *Perry v. Nat'l City Mortg., Inc.*, No. 05CV891 DRH, 2006 WL 2375015 (S.D. Ill. Aug. 15, 2006) (holding that forum selection clause did not apply to FLSA claim that Plaintiff was improperly classified as exempt because plaintiff was "not attempting to enforce any of the terms of the" agreement containing the clause).  Moreover, even if the clause did cover von Brugger's FLSA claim, the Supreme Court has made clear that such clauses are not "dispositive" and should receive no more consideration than that "for which Congress provided in § 1404(a)." *Stewart Organization Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).  Because the considerations relevant to § 1404(a) decisively favor transfer of this case to Texas for the reasons discussed above, von Brugger's contract would not alter the analysis even if it did apply to his FLSA claim.

- Presents no risk that the putative class members will have to initiate duplicative litigation to recover against their direct employers who are not subject to this Court's jurisdiction;

- Is the geographic center of this lawsuit in that policies or practices that apply across the putative class, if any, would have had to originate there, and resolution of Plaintiff's joint employment allegations will turn on Texas-based activities;

- Is a significantly more convenient forum for over five times as many potential class members as Minnesota;

- Is the more convenient forum for each Defendant, and all of the affiliate corporations that will likely become defendants, because each is headquartered there and each entity's officers reside in Texas or nearby Louisiana;

- Is home to the only witnesses who can testify about any guidelines or other evidence potentially relevant to the national putative class;

- Is where Defendants' maintain personnel and payroll records for every member of the putative class; and

- Is the single most likely source of other relevant documents and witnesses because it is the only forum with a connection to *every* putative class member and *every* Defendant.

These considerations, along with all of the other considerations discussed above, tilt the § 1404(a) analysis resolutely in favor of transferring this case to Texas. The Court should therefore grant Defendants' motion and transfer this case to the Northern District of Texas.

Respectfully submitted,

Dated: March 7, 2013 **FAEGRE BAKER DANIELS LLP**

s/Charles F. Knapp

Charles F. Knapp, #220371
*chuck.knapp@faegreBD.com*
Andrew B. Murphy, #0390529
*andrew.murphy@faegreBD.com*
Colton D. Long, #0393240
*colton.long@faegreBD.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000

***Attorneys for Defendants***

dms.us.51551452.04